## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTH WESTERN DIVISION

| | |
|---|---|
| ROBERT DALE ELLINGSWORTH, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-05042-CV-SW-SWH |
| VERMEER MANUFACTURING COMPANY, DWAYNE MARSHALL, | ) |
| Defendants. | ) |

### ORDER

This matter is before the Court on plaintiff Robert Dale Ellingsworth's motion to remand. (Doc. #7) For the following reasons, the motion will be denied.

### I. BACKGROUND

On April 22, 2016, Defendant Vermeer Manufacturing Company (hereafter "Vermeer") removed this action from the Circuit Court of Stone County due to diversity of citizenship between plaintiff Robert Dale Ellingsworth (hereafter "Ellingsworth") and Vermeer. (Doc. #1) Ellingsworth's allegations stem from a workplace accident which occurred on February 13, 2014. (Doc. #1-1, at ¶9) At the time of the injury Ellingsworth, an employee of Vaught Tree Service, was feeding a small tree into a wood chipper manufactured by Vermeer. (Doc. #1-1, at ¶¶8, 9) As Ellingsworth was feeding the tree into the wood chipper the rope/line became entangled in the branches of the tree, which caused the rope/line, log chain and hook to strike Ellingsworth's legs causing him serious injuries. (Doc. #1-1, at ¶9) Ellingsworth filed suit against Vermeer alleging design defect (strict products liability), failure to warn (strict products liability), defective product (negligence), and a failure to warn (negligence). (Doc. #1-1, at Cnts.

I-IV). Additionally, Ellingsworth also brought claims against his co-employee/supervisor Dwayne Marshall (hereafter "Marshall") for co-employee negligence and for "something more/purposeful and dangerous acts that increased the risk of danger". (Doc. #1-1, at Cnts. V-VI)

Plaintiff Ellingsworth and defendant Marshall are residents of Missouri. (Doc. #1-1, at ¶¶1, 4) Defendant Vermeer is an Iowa corporation with its principal place of business in Pella, Iowa. (Doc. #1-1, at ¶2) In the removal petition and in response to Ellingsworth's motion to remand, defendant Vermeer argues that defendant Marshall was fraudulently joined because Missouri law precludes liability for Marshall's conduct and plaintiff has not plead any facts showing that Marshall committed an affirmative negligent act which would expose him to liability. (Doc. #1, at ¶¶10-11; Doc. #9, at 11-14) Therefore, because Marshall was fraudulently joined, Vermeer argues that this Court may properly exercise diversity jurisdiction in this matter. (Doc. #1, at ¶13) Plaintiff argues that he has sufficiently alleged a cause of action against Marshall under the "something more" doctrine. (Doc. #7, at ¶5) Therefore, plaintiff contends that Marshall's joinder was not fraudulent and his joinder destroys diversity, thus necessitating remand. (Doc. #7, at ¶6)

## II. DISCUSSION

Generally, a civil case brought in state court may be removed by a defendant to federal court, if the case could have been brought in federal court originally. 28 U.S.C. § 1441(a). As a court of limited jurisdiction, it is essential that jurisdiction be established as a threshold matter. See Godfrey v. Pulitzer Pub'l Co., 161 F.3d 1137, 1141 (8th Cir. 1998). The party seeking removal has the burden of showing that this Court has subject matter jurisdiction. In re Bus. Men's Assur. Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993). All doubts concerning federal

jurisdiction must be resolved in favor of remand. Wilkinson v. Shackelford, 478 F.3d 957, 963 (8th Cir. 2007); Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997), cert. denied, 522 U.S. 1075 (1998).

When jurisdiction is predicated on diversity of citizenship, complete diversity must exist between the plaintiff and defendants and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332(a). The removing party bears the burden of establishing these requirements. Altimore v. Mount Mercy Coll., 420 F.3d 763, 768 (8th Cir. 2005). Furthermore, a matter cannot be removed "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

A fraudulent joinder occurs where there is a "filing of a frivolous or otherwise illegitimate claim against a nondiverse defendant solely to prevent removal." Filla v. Norfolk Southern Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003). Fraudulent joinder occurs where, under state law, it is clear that there exists no cause of action against the non-diverse defendant. Block v. Toyota Motor Corp., 665 F.3d 944, 948 (8th Cir. 2011). Where, however, "there is a 'colorable' cause of action– that is, if the state law might impose liability on the resident defendant under the facts alleged– then there is no fraudulent joinder." Filla, 336 F.3d at 810. The removing party has the burden of showing that the resident defendant's joinder is fraudulent. Hutchen v. Wal-Mart Stores E. I, LP, 555 F. Supp. 2d 1013, 1017 (E.D. Mo. 2008).

The Eighth Circuit has rejected the argument that courts should review fraudulent joinder in the same manner as a Rule 12(b)(6) dismissal. Junk v. Terminix Int'l Co., 628 F.3d 439, 445 (8th Cir. 2010). The court in Junk, noted that the Rule (12)(b)(6) standard is more demanding than the Filla standard, and that "[u]nder the Filla standard 'the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might

impose liability based upon the facts involved." Junk, 628 F.3d at 445. Therefore, this Court will utilize the Filla standard in assessing whether remand is required.

In its Notice of Removal, defendant Vermeer contends that Missouri's Workers' Compensation Law (Mo. Rev. Stat. §278.010, et seq.) precludes liability for Marshall's conduct because Ellingsworth has not alleged that Marshall committed an "affirmative negligent act" and therefore no cause of action can be brought against Marshall. (Doc. #1, at ¶¶5-12) Ellingsworth argues that his allegations of an "affirmative negligent act" against Marshall are "premised upon Marshall's actions in ordering plaintiff to use a wood chipper that he knew to be dangerous and malfunctioning, and do so without adequate assistance from other workers, among other affirmative acts of neglect."[1] (Doc. #7, at 1-2) In his Suggestions in Support of Plaintiff's Motion to Remand, Ellingsworth elaborates by stating that:

> Despite the fact that industry practice, as well as the chipper's product instructions, required at least two workers assist in loading tree branches into the chipper at any given time, Marshall only assigned one worker, he being [Ellingsworth], to load wood into the chipper. He assigned all other workers at the job site to other tasks, thus prohibiting them from assisting Dale. Further at the time of the injury, Marshall had left the job site, thus neglecting to oversee the operation of the tree removal project. Additionally Marshall refused to outfit the wood chipper with protective devices necessary to make [Ellingsworth's] job safe, or to implement worksite safety rules.

(Doc. #8, at 2)

---

[1] Ellingsworth also argues that Marshall did not consent to the removal and therefore the rule of unanimity is violated. (Doc. #10, at 11-12) This district, however, has consistently found that "the consent to removal of a party who has been fraudulently joined is not necessary." Simpson v. Niagra Mach. & Tool Works, No. 05-1122-CV-W-FJG, 2006 WL 181954, at *3 n. 1 (W.D. Mo. Jan. 24, 2006), aff'd sub nom. Simpson v. Thomure, 484 F.3d 1081 (8th Cir. 2007); Santoyo v. Bear Lake Holdings, Inc., No. 10-CV-04050-NKL, 2010 WL 2522745, at *4 (W.D. Mo. June 15, 2010); Chou Vu Heu v. Toyo Mach. & Metal Co., No. 05-1030-CV-W-SOW, 2006 WL 89851, at *2 (W.D. Mo. Jan. 13, 2006); Pleasant v. Noble Fin. Corp., 54 F. Supp. 3d 1071, 1074 n. 1 (W.D. Mo. 2014). Therefore, Marshall's consent was not required.

4

An employer has "a nondelegable duty to provide a reasonably safe place to work." Kelley v. DeKalb Energy Co., 865 S.W.2d 670, 672 (Mo. 1993). At common law, an employer's duties relevant to safety were:

> (1) to provide a safe workplace; (2) to provide safe equipment in the workplace; (3) to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware; (4) to provide a sufficient number of competent fellow employees; and (5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety.

Hansen v. Ritter, 375 S.W.3d 201, 208 (Mo. Ct. App. 2012). An employer who fails to discharge any of these duties remains liable to an employee under the Workers' Compensation Law. Id. at 210. The Workers' Compensation Law supplanted the common law by entitling an employee "to recover for such accidents without the necessity of establishing negligence and was freed from defenses such as fellow servant, contributory negligence and assumption of risk . . . . [while the employer] received immunity from general tort liability and damages and received an established basis for determining the extent of its monetary liability." State ex rel. Badami v. Gaertner, 630 S.W.2d 175, 180 (Mo. Ct. App. 1982).

Whether the exclusivity provisions of the Workers' Compensation Law applied to co-employee liability has varied widely over the course of the act's existence. See Peters v. Wady Industries, Inc., 489 S.W.3d 784, 790-793 (Mo. 2016) (discussing the treatment of co-employee liability under the Workers' Compensation Law). The current version of the statute, and that which was in effect at the time of the accident, states, in part:

> Any employee of such employer shall not be liable for any injury or death for which compensation is recoverable under this chapter and every employer and employees of such employer shall be released from all other liability whatsoever, whether to the employee or any other person, except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.

5

Mo. Rev. Stat. §287.120. Both parties agree that the current version of the Workers' Compensation Law requires that the court determine whether "something more" than the failure to non-delegable duties has been alleged. (Doc. #8, at 9-10; Doc. #9, at 5-6) This Court agrees that the current version of the statute requires a something more/affirmative negligent act determination.

The "something more" test in Missouri first arose in State ex rel. Badami v. Gaertner, 630 S.W.2d 175 (Mo. Ct. App. 1982). There the Court of Appeals was asked to determine "whether a supervisory employee, including a corporate officer, may be held personally liable for injuries sustained by a fellow employee covered by workmen's compensation where the injuries occur because of the supervisor's failure to perform the duty, assigned to him by the employer, to provide the fellow employee a reasonably safe place to work." Badami, 630 S.W.2d at 176. After reviewing the history of co-employee liability, Missouri's Workers' Compensation Law, and the treatment of the issue by other states, the court found that the approach Wisconsin took was more closely aligned with the treatment of co-employee liability in Missouri. Id. The Wisconsin approach held that a supervisory co-employee has "immunity under the workmen's compensation law where his negligence is based upon a general non-delegable duty of the employer; he does not have immunity where he does an affirmative act causing or increasing the risk of injury." Id. at 179. The Badami court found that "something more" than the mere failure of the co-employee to fulfill the duty to provide a "reasonably safe place to work" which was delegated to the co-employee by the employer must be charged. Id. at 180.

The Supreme Court of Missouri later refined the "something more" test to require that the co-employee commit "affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace." Kelley, 865 S.W.2d at 672; see also State ex rel.

6

Taylor v. Wallace, 73 S.W.3d 620, 621 (Mo. 2002) overruled on other grounds by McCracken v. Wal-Mart Stores E., LP, 298 S.W.3d 473 (Mo. 2009).  An affirmative negligent act "can best be described as an affirmative act that creates additional danger beyond that normally faced in the job-specific work environment." Burns v. Smith, 214 S.W.3d 335, 338 (Mo. 2007).  The court in Burns further noted that the requirement of an affirmative negligent act "satisfies the concern that although there must be an independent duty to the injured co-employee, that duty cannot arise from a mere failure to correct an unsafe condition and must be separate and apart from the employer's non-delegable duty to provide a safe workplace." Burns, 214 S.W.3d at 338.

While the current statute is a departure from earlier statutes regarding the exclusivity clause and co-employee liability, the language of the statute closely follows the language of the post-Taylor "something more"/affirmative negligent act cases. Peters, 489 S.W.3d at 798 n. 10. Therefore, cases applying the something more/affirmative negligent act test, especially those decided after Taylor, are useful in analyzing whether section 287.120 precludes liability.  In arguing that Ellingsworth has sufficiently alleged an affirmative negligent act against Marshall, Ellingsworth urges this court to look at Burns, Groh v. Kohler, 148 S.W.3d 11 (Mo. Ct. App. 2004), and Knudson v. Sys. Painters, Inc., 634 F.3d 968 (8th Cir. 2011).

In Burns, the plaintiff was injured when a water pressure tank on a concrete mixer truck exploded as plaintiff was entering the cab of the truck. Burns, 214 S.W.3d at 336.  A few months prior to the explosion, defendant, who was plaintiff's supervisor, used a salvage water pressure tank to place a weld over an area on the tank that was corroded and rusted. Id.  Upon completing the weld, defendant told plaintiff to "run it till it blows", which it did a few months later. Id.  The court in Burns noted that the manner in which the water pressure tank was welded created a dangerous condition and that the condition of the water pressure tank had deteriorated to the

7

point that a weld should not have been attempted. Id. at 339. Furthermore, the defendant, who was not a certified welder, had done the welds incorrectly in part because he had poor vision. Id. The court found defendant's directive to "run it till it blows" was an intentional act that he "knew would result in a particularly dangerous event." Id. Therefore, the court found that defendant had committed an affirmatively negligent act which created an additional danger beyond what is normally faced in such an environment. Id.

The plaintiff in Groh v. Kohler, 148 S.W.3d 11 (Mo. Ct. App. 2004), operated a plastic injection moulding machine as part of her employment. Groh v. Kohler, 148 S.W.3d 11, 12 (Mo. Ct. App. 2004) abrogated on other grounds by Burns. Plaintiff informed her supervisor that the machine would occasionally malfunction, to which the supervisor told the plaintiff to "quit whining" and to "just deal with it." Id. The plaintiff was later injured when the machine malfunctioned. Id. at 12. The court found that cases finding that plaintiffs had sufficiently alleged "something more" were cases that "the supervisor personally participated in the activity constituting the 'something more' by directing the employee to participate in acts that were dangerous and that a reasonable person would recognize to be hazardous and beyond the usual requirements of the employment." Id. at 14. The co-employee/supervisor in Groh was informed of the malfunctioning machine and failed to inspect or fix the machine. Id. at 16. Furthermore, the co-employee/supervisor told plaintiff to "quit whining" and to "just deal with it." Id. Therefore, the court found that the "reasonable inference is that [the co-employee/supervisor], knowing the machine's function was to compress plastic with substantial force, expected and required [plaintiff] to use the allegedly defective and dangerous machine without regard to its condition or her safety." Id. The court went on to find that the co-employee/supervisor's conduct was sufficient to meet the "something more"/affirmative negligent act standard. Id.

8

In Knudson v. Sys. Painters, Inc., 634 F.3d 968 (8th Cir. 2011), the plaintiff alleged that his co-employee/supervisor demanded the plaintiff install HVAC systems in a poorly ventilated area despite the co-employee/supervisor's knowledge that the plaintiff and other workers had complained about the poor ventilation issues and had experienced breathing issues. Knudson, 634 F.3d at 981. Citing Groh, the Eighth Circuit found that a co-employee/supervisor "'effectively created the dangerous condition by ordering [the plaintiff] to work in an environment where [the co-employee/supervisor] knew the employees he was supervising were having breathing problems." Id. at 981-82. Therefore, the Court found that there was an arguably reasonable basis "for predicting that [Missouri law] might impose liability" on the co-employee and therefore the co-employee/supervisor was not fraudulently joined. Id. at 982.

Defendant Vermeer, on the other hand, asserts that the instant matter is similar to those cases finding that the plaintiff failed to sufficiently allege an affirmative negligent act on the part of the co-employee. (Doc. #9, at 8) In Taylor, the plaintiff was injured when a co-employee, who was driving a trash truck, hit a mailbox causing the plaintiff to be injured. Taylor, 73 S.W.3d at 621. In its suit against defendant, plaintiff alleged that defendant "1) failed to keep a careful lookout; 2) carelessly and negligently struck a mailbox while driving; and 3) carelessly and negligently drove too close to a fixed object." Id. at 622. The Supreme Court of Missouri found that the allegations failed to allege any "purposeful, affirmatively dangerous conduct" and instead are directed at the employer's duty to provide a safe work environment. Id. Therefore, the co-employee was protected from liability under the Workers' Compensation Law. Id.

In Nowlin ex rel. Carter v. Nichols, 163 S.W.3d 575 (Mo. Ct. App. 2005), the decedent and co-employee were attempting to extricate a bulldozer that had become stuck in the mud. Nowlin ex rel. Carter v. Nichols, 163 S.W.3d 575, 577 (Mo. Ct. App. 2005), abrogated on other

9

grounds by Burns. The co-employee directed the decedent to assist in the extrication. Id. The co-employee, operating a second bulldozer in an attempt to extricate the first bulldozer, drove the second bulldozer uphill. Id. The co-employee exited the second bulldozer while the second bulldozer's motor was running, and the second bulldozer rolled downhill, pinning the decedent between the two bulldozers. Id. The court found that the co-employee's conduct was "within the usual scope of employment" and that he did not "engage in inherently dangerous conduct purposefully directed at plaintiff." Id. at 579. The court stressed that an "affirmative negligent act is not synonymous with any negligent act, as the law requires a purposeful act 'directed' at a co-employee." Id. The court went on to state that a "simple allegation of negligent operation of machinery or a vehicle is not 'something more' than an allegation of a breach of duty to maintain a safe working environment." Id. at 580.

In Simpson v. Thomure, 484 F.3d 1081 (8th Cir. 2007), the Eighth Circuit affirmed a district court's decision denying a motion to remand and dismissing the non-diverse party pursuant to Federal Rule of Civil Procedure 12(b)(6). Simpson v. Thomure, 484 F.3d 1081, 1083 (8th Cir. 2007). The plaintiff in Simpson, alleged that she was injured while operating a machine which could be operated in two control modes, one of which carried a higher risk of danger to the operator. Id. Plaintiff further alleged that the co-employee/supervisor had the key to switch to the riskier mode and did so without providing adequate safety instructions to plaintiff. Id. The court found that plaintiff's injuries occurred during the course of her normal duties and the machine was not "make-shift" or "jerry-rigged." Id. The co-employee/supervisor was not aware that the machine was malfunctioning. Id. The plaintiff's allegations were only that the co-employee/supervisor was "negligent for setting the machine to operate in the more dangerous of its two control modes and for allowing [the plaintiff] to operate the machine in that control mode

10

without adequate safety instruction." Id. The court rejected plaintiff's attempt to hold the co-employee/supervisor liable and found that the condition of the machine "'was part of the employer's nondelegable duty to provide a safe workplace.' Failing to install a recommended safety device relates to the employer's general duty to provide a safe work environment. And allegations of inadequate training or inadequate safety warnings also relate to the employer's general duty." Id. at 1086 (internal citations omitted).

In the instant matter, Ellingsworth was injured when he was feeding a small tree into a wood chipper. (Doc. #1-1, at ¶9) While Ellingsworth was feeding the tree into the wood chipper the winch rope/line became entangled in some branches which caused the rope/line, log-chain and hook to hit Ellingsworth at a high rate of speed causing him injury. (Doc. #1-1, at ¶9) As discussed supra, Ellingsworth claims that Marshall committed affirmative negligent acts by requiring Ellingsworth to operate the tree chipper alone without sufficient assistance from other workers, failing to equip the wood chipper with safety devices, failing to implement safety rules and proper training, and by leaving the job site.

Ellingsworth's allegations do not rise to the level of affirmative negligent acts directed at Ellingsworth. Unlike the facts in Burns or Groh, there is no indication that Marshall knew the danger posed by the wood chipper or that he somehow created an increased risk of danger.[2] Ellingsworth's allegation that Marshall knew or should have known that the wood chipper was in a defective condition, or that injury to the plaintiff was inevitable are "mere conclusions not supported by alleged fact . . . [and may be] properly disregarded . . . ." See Felling v. Ritter, 876 S.W.2d 2, 5 (Mo. Ct. App. 1994) (rejecting certain assertions by the plaintiff where such

---

[2] In his complaint, Ellingsworth utilizes a reasonable prudent person standard in determining whether Marshall should have anticipated the danger. (Doc. #1-1, at ¶62) The reasonable prudent person standard was rejected by the Supreme Court of Missouri in Burns and therefore will not be considered by this Court. Burns, 214 S.W.3d at 338-39.

11

assertions were not supported by alleged facts). Furthermore, Ellingsworth's own claims show that the wood chipper was used in the manner it was intended to be used. As part of his product liability claims against Vermeer, Ellingsworth asserts that the "wood chipper was used by [Ellingsworth] **in a manner reasonably anticipated**." (Doc. #1-1, at ¶¶14, 22, 23, 43) (emphasis added) Therefore, there is no showing that Marshall created an increased risk of danger.

Ellingsworth's allegations against Marshall fit squarely within the duties of the employer to provide a reasonably safe working environment. In fact, each of Ellingsworth's allegations is specifically addressed in the list of non-delegable duties specifically ascribed to the employer under common law, discussed in Hansen, supra. Therefore, no cause of action could be maintained against Marshall and his joinder was fraudulent. Hence, removal to this Court was proper.

## III. CONCLUSION

Based on the foregoing, it is

ORDERED that plaintiff Ellingsworth's motion for remand (doc. #7) is DENIED.

/s/ Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE